**Robert W. PHILLIPS,**
**Plaintiff-Appellant,**

v.

**James THOMPSON, et al.,**
**Defendants-Appellees.**

No. 82–2372.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1983.
Decided Aug. 24, 1983.

Kevin M. Kane, Prairie State Legal Services, Inc., Aurora, for plaintiff-appellant.

Robert John Connor, Sp. Asst. Atty. Gen., Dept. of Mental Health & Developmental Disabilities, Chicago, Ill., for defendants-appellees.

Before PELL and POSNER, Circuit Judges, and BROWN,* Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

In December, 1979, several hundred higher functioning but mentally retarded adults, under a program of the State of Illinois, were living at and cared for at the North Aurora Center (hereinafter the Center). The Center was a privately owned and operated facility for the mentally retarded.

On December 15, the Center closed its doors, giving only 24 hours notice of its intent to do so. Representatives of the Illinois Department of Mental Health and Developmental Disabilities (hereinafter DMHDD) thereupon directed these State-sponsored residents to pack their belongings and moved them to State mental institutions.

Robert W. Phillips (Phillips), who is one of the persons who had been at the Center and was moved to a State mental institution, brought this class action in the district court. The defendants are the governor, officials of DMHDD and the Illinois Department of Public Health. The class that was certified consisted of all persons who on December 15, 1979 resided at the Center and who were transferred by DMHDD to State mental institutions.

The amended complaint seeking declaratory and injunctive relief is succinctly summarized in the Phillips brief as follows:

Plaintiffs' Complaint alleged that the state institutions in which the DMHDD placed them unnecessarily restrict their personal liberties; however, the defendants have failed to develop alternatives which would be less restrictive. As relevant here, plaintiffs allege that defendants' failure to develop less restrictive alternatives violates their rights under the Fourteenth Amendment to the United States Constitution; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Illinois Mental Health and Developmental Disabilities Code, ILL.REV.STAT. ch. 91½, § 1–100 et seq. (1981).

Appellants' brief at 2.

As is indicated by the quoted portion of the Phillips brief and is made clear by other parts of the brief, while Phillips contends that the class members are illegally restricted in their liberty of movement in the institutions in which they reside, their main contention is that they have been illegally denied a right to alternative care by place-

* The Honorable Bailey Brown, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

ment in a less restrictive community residential setting.[1]

The district court granted defendants' motion to dismiss the claim based on 29 U.S.C. § 794.

Prior to trial, the district court decided that it would first hear and determine whether the personal freedom of the class members was substantially restricted, whether the class members were receiving adequate rehabilitative services, and whether class members were voluntarily in the State institutions. The court deferred the determination whether the State was making adequate efforts to develop appropriate alternative community residential programs for a later trial in the event Phillips prevailed on the other issues.

The district court held a six day bench trial and determined that Phillips and the other members of the class were voluntarily in the State institutions, that the liberty of movement of the class members was not being illegally restricted in violation of the fourteenth amendment, that the members of the class were not being illegally denied habilitation (i.e. training) in the State institutions in violation of the fourteenth amendment, and that it would not, on the basis of pendent jurisdiction, decide the claim based on the Illinois statute. The district court then dismissed the case.

On appeal, appellants contend that the district court erred in determining that they were voluntary residents in the State facilities and erred in determining that their liberty and their rights to habilitation were not illegally restricted in these facilities in violation of the fourteenth amendment. Appellants also appear to contend on appeal that the district court should have heard and determined whether appellants were illegally being denied less restrictive alternative community residential living and that the case should be remanded for such a hearing and determination. Appellants still further contend that the district court erred in granting the motion to dismiss their claim under 29 U.S.C. § 794 and that it erred in not deciding their claim under the Illinois statute.

We believe that the recent decision by the Supreme Court in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), relied upon by the district court, controls this case with respect to the fourteenth amendment claims. There the Court recognized that it was considering for the first time the substantive rights under the due process clause of mentally retarded persons *involuntarily* committed. And while we decide that the district court did not err in determining that the class members here were *voluntarily* residing in these State institutions, and even assuming that voluntary residents have some due process rights, we conclude that the district court did not err in determining that these class members were not denied a due process right with respect to freedom of movement or training.

■ With respect to appellants' claim that they have a substantive due process right under the fourteenth amendment to care in a community residential setting, the short answer is, as is stated in *Youngberg:*

> As a general matter, a State is under no constitutional duty to provide substantive services for those within its borders. (Citation omitted.)

*Youngberg,* 457 U.S. at 317, 102 S.Ct. at 2459, 73 L.Ed.2d at 38.

Thus the question presented under the due process clause is solely one of whether, under the conditions in the institutions in which the class members were cared for, they were deprived of a constitutional right of liberty of movement and training.

■ As stated, the district court determined that these class members were "voluntarily" residing in these institutions, and we conclude that this determination is supported by the record and certainly not clearly erroneous. Rule 52(a), Fed.R.Civ.P. They were not committed by legal proceed-

---

**1.** By the time of the trial, a substantial number of the class members had already been placed in a community residential setting.

ings. It is true that when it became necessary on short notice to move them from the Center, the class members, as a practical matter, had little choice but to move to the State-operated institutions. And it may well be that thereafter most of these persons, as a practical matter, found it necessary to remain in these institutions because they had no other place to live. At the same time, these persons had the legal right to leave at anytime by simply following the administrative procedure required for a discharge.

■ As before indicated, we assume, *arguendo,* that since the State of Illinois had accepted the responsibility of caring for these class members who were voluntarily residing in the State institutions, the class members had some due process rights under the fourteenth amendment. Even if we further assume, *arguendo,* that these class members are entitled to the same rights as involuntarily committed mentally retarded persons, we still conclude that, applying the teaching of *Youngberg,* the district court did not err in determining that the due process rights of these class members were not violated.

In adjudicating the claim of the class members that their liberty of movement was illegally restrained, we glean from *Youngberg* that it must be determined whether professional judgment in fact was exercised in balancing the liberty interest of the class members against relevant State interests. *Youngberg,* 457 U.S. at 320–322, 102 S.Ct. at 2460, 2461, 73 L.Ed.2d at 40–41. The district court determined, which is adequately supported by the record, that the liberty of movement of class members was limited only by the reasonable requirements of caring for a large number of handicapped people in an institutional setting as such requirements were determined by the professionals who directed the operations of these institutions. Thus the class members were not denied their due process right to liberty of movement.

■ With respect to training, *Youngberg* teaches that, at the most, the class members were entitled to minimally adequate train-

ing as is reasonable in the light of their interest in freedom of movement and that deference must be shown to the professional judgment of those directing the operation of the institution. Such training as is required, therefore, is training to enhance the ability of the class members to exercise their right to liberty of movement. We do not understand the contention of these class members, who are only mildly or moderately retarded, to be that they needed any training for such purpose. In any case, the finding of the district court that the class members were receiving adequate training and that such was prescribed in an exercise of professional judgment is supported by the record. In this connection the district court found that the class members received vocational and other educational training as well as training in self care. Thus the class members were not denied a due process right of habilitation or training.

■ Appellants further contend that the district court erred in granting the motion to dismiss their claim based on Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), which provides:

No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Appellants appear to contend that, under this statute, appellees had the affirmative duty to create less restrictive community residential settings for them. But there is no contention that these class members, because of their handicap, are being denied access to community residential living that Illinois is affording to others. Thus, giving effect to the plain meaning of this statute, *Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979), it simply has no application to appellants' claim. The district court, therefore, was correct in granting the motion to dismiss this claim.

Lastly, appellants contend that the district court erred in not deciding their pendent claims made pursuant to the Illinois Mental Health and Developmental Disabilities Code, ILL.REV.STAT. ch. 91½, § 1–100 *et seq.* (1981).

The exercise of pendent jurisdiction with respect to claims made pursuant to state law is a matter that addresses the informed discretion of the district court. *Mayor of the City of Philadelphia v. Educational Equality League,* 415 U.S. 605, 627, 94 S.Ct. 1323, 1336, 39 L.Ed.2d 630 (1974). We cannot say that the district court abused its discretion in refusing to exercise pendent jurisdiction here.

It results, then, that the judgment of the district court dismissing this action must be AFFIRMED.