**DANIEL B., Jerry G., Alfred W., intervenor, and Mrs. Alfred Wissman, as next best friend of Alfred W. and all other similarly situated persons, Plaintiffs,**

**v.**

**Helen O'BANNON, in her official capacity as Secretary, Department of Public Welfare, Commonwealth of Pennsylvania, and Leon Soffer, in his official capacity as County Administrator, Philadelphia County Mental Retardation Program, and City of Philadelphia, Defendants.**

Civ. A. No. 79–4088.

United States District Court,
E.D. Pennsylvania.

March 12, 1986.

Paul M. George, Developmentally Disabled Advocacy Project, Andrew F. Erba,

Community Legal Services, Edmond A. Tiryak, MaGuigan, Shapiro, Engle & Tiryak, Philadelphia, Pa., for plaintiffs.

Armando Lamdda, Litigation Div., Law Dept., Philadelphia, Pa., for defendant City of Philadelphia.

Alan J. Davis, Asst. City Solicitor, Richard J. Gold, CH. Asst. City Solicitor, Philadelphia, Pa., for defendant Soffer and the City.

Michael Harvey, Dist. Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendant O'Bannon.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiffs brought this action on behalf of a class of mentally retarded individuals who were institutionalized at Woodhaven Center ("Woodhaven"), an intermediate care facility for the mentally retarded operated by Temple University under contract with the Commonwealth of Pennsylvania, and had been recommended for discharge to less restrictive community living arrangements ("CLAs") but had not yet been discharged.[1] Plaintiffs brought this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Jurisdiction is conferred by 28 U.S.C. § 1343(3) and (4).

On November 4, 1985, a hearing was held pursuant to Fed.R.Civ.P. 23(e) on plaintiffs' motion to approve a settlement with defendants. Upon full consideration of the written submissions and transcript at oral argument in support of the settlement, the court now approves the settlement as fair, reasonable and adequate.

Plaintiffs alleged that they committed themselves voluntarily to Woodhaven by contracts with Woodhaven and plaintiffs' respective base service units ("BSUs"). Third Amended Complaint, ¶¶ 19, 30. These contracts required Woodhaven to provide CLAs when plaintiffs had completed their treatment programs. Third Amended Complaint, ¶¶ 21, 32. Plaintiffs alleged that although they completed their Woodhaven treatment programs and were referred by the Woodhaven staff to BSUs for community placement, they have not been placed in CLAs. Third Amended Complaint, ¶¶ 24, 25, 35, and 36. Plaintiffs alleged that they have not been placed "because defendants ... have failed to discharge their ... duties under federal and state law to provide plaintiff with suitable community living arrangements." Third Amended Complaint, ¶ 25. The defendants in this case are the Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, in his official capacity, the City of Philadelphia, and the Executive Director of the Office of Mental Health/Mental Retardation in his official capacity.

Plaintiffs sought a declaratory judgment that defendants' alleged failure to provide them with CLAs resulted in plaintiffs' unnecessary institutionalization in violation of: 1) the Eighth and Fourteenth Amendments to the United States Constitution; 2) the Rehabilitation Act of 1973, 29 U.S.C. § 794; 3) the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6001 *et seq.;* and 4) Pennsylvania law.

At a pretrial conference, plaintiffs withdrew their claims under the Eighth Amendment and 42 U.S.C. § 6011 because of legal developments subsequent to filing their complaint. The court dismissed the plaintiffs' state law claims in its memorandum of June 11, 1984; *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Eleventh Amendment bars federal suit against state officials to enforce state law; Eleventh Amendment also bars companion claim against county officials when relief against them would be partial and incomplete.) Therefore, had this case gone to

---

1. The original plaintiff portion of the caption in this case was: "Danny B., and Jerry G. on behalf of themselves and all others similarly situated." Pursuant to court order of June 13, 1985, the plaintiff portion of the caption was amended as follows to include a guardian: "Danny B., Jerry G., Alfred W., intervenor, and Mrs. Alfred Wissman, as next best friend of Alfred W. and all other similarly situated persons."

trial, plaintiffs would seek to establish liability based on only two grounds: 1) the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and 2) § 504 of the Rehabilitation Act of 1973.

Plaintiffs also sought injunctive relief requiring defendants to: 1) develop for class members individual exit plans into CLAs; 2) place class members into suitable CLAs if such facilities exist; and 3) if no suitable CLAs are available, fund the creation of new CLAs so that class members can be placed in such facilities.

Defendant Secretary moved for summary judgment or, in the alternative, for a stay on the ground that plaintiffs were members of the class certified in *Halderman v. Pennhurst State School and Hospital*, 446 F.Supp. 1295 (E.D.Pa.1977), *aff'd in part*, 612 F.2d 84 (3d Cir.1979), *vacated and remanded*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *judgment restated on remand*, 673 F.2d 647 (3d Cir.1982), *rev'd and remanded*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*"Pennhurst"*), and therefore were barred under the doctrines of *res judicata* and collateral estoppel from maintaining this action. The *Pennhurst* action was filed in May, 1974 by retarded residents and former residents of Pennsylvania State School and Hospital (now Pennhurst Center), an institution owned and operated by the Commonwealth of Pennsylvania, to obtain, *inter alia*, an injunction closing Pennhurst and requiring the state to provide care, training and education for class members in CLAs. *Pennhurst*, 456 F.Supp. at 1298. In November, 1976 the *Pennhurst* court certified a class consisting of all retarded persons "who as of May 30, 1974, and any time subsequent, have been or may become residents of Pennhurst...." 446 F.Supp. at 1300. The class included all retarded persons residing at Pennhurst on that date, those on the waiting list and those who may be placed at Pennhurst because of the unavailability of "alternative services in the community." *Id.* The defendants were "Pennhurst; the Pennsylvania Department of Public Welfare; various state and county officials responsible for supervising the Commonwealth's and the counties' retardation programs; and the superintendent and various employees of Pennhurst." 446 F.Supp. at 1301–02 (footnote omitted).

On June 11, 1984, this court granted summary judgment for defendants on the ground that the named plaintiffs were members of the Pennhurst waiting list and therefore were barred from bringing this action.[2] An appeal was taken but plaintiffs' subsequent request that the Third Circuit Court of Appeals remand this action for consideration of a Rule 60(b) motion was granted on August 27, 1984. The Rule 60(b) motion was based on newly discovered evidence, *i.e.*, the *Pennhurst* settlement agreement, executed on July 12, 1984, provided no relief to the named plaintiffs or members of the putative class in this action. The relief granted in *Pennhurst* was limited to its then present residents and the *Pennhurst* settlement class was modified accordingly. *See Halderman, et al. v. Pennhurst State School, et al.*, 610 F.Supp. 1221, 1228 (E.D.Pa.1985).

This court gave favorable consideration to the Rule 60(b) motion and on July 3, 1985, with the consent of the parties, certified a Rule 23(b)(2) liability class of, "All mentally retarded individuals currently residing at Woodhaven Center whose domicile is or was Philadelphia County who have been recommended by treatment teams at Woodhaven Center for discharge to less restrictive community living arrangements."

On August 30, 1985, the parties submitted a stipulation of settlement for approval of the court. Under the proposed settlement, the Department of Public Welfare for the Commonwealth of Pennsylvania will provide sufficient funding to the

---

**2.** Although defendants Soffer and the City of Philadelphia did not move for summary judgment on the ground that plaintiffs were barred from bringing this suit, the court also entered summary judgment for the non-moving defendants on the same ground. *Missouri Pacific Railroad Co. v. National Milling Co.*, 409 F.2d 882 (3d Cir.1969).

Philadelphia Office of Mental Health/Mental Retardation for placement of at least 23 members of plaintiffs' class in CLAs each year, beginning on July 1, 1986. There are 115 members in the class so that all class members who should be placed in CLAs may be so placed by 1991. After class members are placed in CLAs, the state will provide sufficient funding to maintain the placements.

While the state defendant will provide funding, the City defendants will provide the actual CLAs. The City defendants also will provide community services to ensure minimally adequate habilitation for each class member.

The actual placement decisions will be made by an interdisciplinary team. Plaintiff class members and their parents and/or guardians, or closest relatives, will play a significant role on that team in the placement decision-making process. Nothing in the settlement agreement requires the interdisciplinary team to place any member of the class in a CLA. In addition, the settlement agreement specifically provides that absent the availability of an appropriate placement, no class member will be moved merely to meet a timetable.

Implementation of the agreement is contingent upon the availability of state funds. In the event that there are insufficient funds, plaintiffs retain the right to litigate their claims. The court will maintain active jurisdiction until June 30, 1991 to ensure compliance with the agreement but the court will play no role in the placement decision-making process. On June 30, 1991, the case may be dismissed with prejudice.

On September 13, 1985, the court ordered that notice of the proposed settlement be sent by first class mail on or before September 20, 1985, to each member of the class and to a family representative of each class member. The notice stated that any member of the class or family representative who objected to the settlement could appear and be heard on the proposed settlement on November 4, 1985 so long as any objections had been filed in written form on or before October 25, 1985. The court finds this notice complied with Fed.R.Civ.P. 23(e) and was the best practicable under the circumstances.

## APPROVAL OF SETTLEMENT

Rule 23(e) of the Federal Rules of Civil Procedure mandates court approval of a class action settlement:

A class action shall not be dismissed or compromised without the approval of the Court, and notice of the proposed dismissal or compromise shall be given to all members of the class....

Approval of a proposed class action settlement is discretionary with the court. *Girsch v. Jepson*, 521 F.2d 153, 156 (3d Cir.1975); *Ace Heating & Plumbing Company v. Crane Company*, 453 F.2d 30, 34 (3d Cir.1971). Settlement is a course favored by law, *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770, 773 (2d Cir.1972), but a settlement will be approved only if it is "fair, adequate, and reasonable" to the members of the class, *Walsh v. Great Atlantic and Pacific Tea Company, Inc.*, 726 F.2d 956, 965 (3d Cir.1983). The settlement must be both substantively reasonable compared to the likely rewards of litigation, *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir.1978), and the result of good faith, arms length negotiations, *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir.1982).

The appellate courts have specified factors to be considered prior to decision upon the fair, reasonable and adequate nature of a proposed class action settlement. *See Malchman v. Davis*, 706 F.2d 426, 433–34 (2d Cir.1983) (nine factors); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir.1983) (six factors); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983) (eight factors). In *Girsch v. Jepson*, 521 F.2d 153 (3d Cir.1975), the Third Circuit Court of Appeals noted the relevancy of the following nine factors in determining the fairness of a settlement:

... (1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation....

*Girsch,* 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974)).

### A. Uncertainty of Litigation

Had the case gone to trial, it is far from certain that the plaintiff class would have been the prevailing party. To obtain injunctive relief, plaintiffs would have had to establish a constitutional right to confinement in the least restrictive alternative under the liberty interest of the Due Process Clause of the Fourteenth Amendment or that their continued confinement at Woodhaven violated the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Act").

An action for retroactive monetary damages under Section 504 of the Act is barred by the Eleventh Amendment, *Atascadero State Hospital & Calif. Dept. of Mental Health v. Scanlon,* — U.S. —, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), but an action against state officials for prospective future relief is not, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), so long as that relief is based on violation of federal right rather than state law; *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*"Pennhurst II"*). Section 504 of the Act provides:

No otherwise qualified handicapped individual ... shall solely, by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

29 U.S.C. § 794.

Plaintiffs contended that their continued confinement at Woodhaven rather than in CLAs effectively excluded them from such federally assisted programs as "housing; employment and vocational skills training; educational services ...; recreational programs; and music and artistic programs." Third Amended Complaint, ¶¶ 41, 48, and 49.

To have established a violation of § 504, plaintiffs would have had to prove that: (1) they are handicapped within the meaning of the Act; (2) they are otherwise qualified for the services sought; (3) they were excluded from receiving these services by reason of their handicaps; (4) the service program receives federal financial support. *See Strathie v. Department of Transportation,* 716 F.2d 227, 230 (3d Cir.1983). While plaintiffs probably would have had no problem in establishing elements one, two and four of the *Strathie* test, it would have been difficult for them to prove element three, that is, that they were excluded by reason of their handicaps, on the state of the evidence known to the court at the time of settlement. It is presently well established that § 504 does not require affirmative action on behalf of handicapped persons; it only prohibits discrimination against them. *See, e.g., Smith v. Robinson,* 468 U.S. 992, —, 104 S.Ct. 3457, 3466, 82 L.Ed.2d 746, 760 (1984). It is likely that plaintiffs would have had some difficulty in establishing defendants' duty to provide CLAs for them under § 504 of the Act.

Plaintiffs also would have had difficulty in establishing a constitutional right to CLA placement. The Supreme Court has held that the mentally retarded in state facilities have a constitutional right to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as may reasonably be required by

these interests. *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). But the Court has not yet held that there is a constitutional right to confinement in the least restrictive alternative. In *Youngberg,* the Court held due process satisfied if restraints are imposed on a mentally retarded individual by decision of a qualified professional in accordance with accepted professional standards:

> The decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

457 U.S. at 323, 102 S.Ct. at 2462. Following *Youngberg,* some courts have rejected the existence of a constitutional right to confinement in the least restrictive alternative.

The Third Circuit Court of Appeals held in *Rennie v. Klein,* 653 F.2d 836 (3d Cir. 1981) (*"Rennie I"*), that involuntarily committed mentally retarded patients have a constitutional right to refuse treatment, including antipsychotic drugs; the Court employed "a least intrusive means" analysis. 653 F.2d at 845–47. The Supreme Court vacated *Rennie I,* and remanded it to the Court of Appeals for further consideration in light of *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). *Rennie v. Klein,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982). Upon reconsideration in *Rennie v. Klein,* 720 F.2d 266 (3d Cir.1983) (*"Rennie II"*), the Court of Appeals affirmed its holding in *Rennie I,* that involuntarily committed mentally retarded patients have a constitutional right to refuse antipsychotic drugs, but a plurality of the court rejected its "least intrusive means" analysis. *See also Society for Goodwill to Retarded Children v. Cuomo,* 737 F.2d 1239 (2d Cir.1984) (no constitutional right to community placement or to the least restrictive alternative); *Phillips v. Thompson,* 715 F.2d 365, 368 (7th Cir.1983) (state denial of community placement to mentally retarded individuals and place-

ment in state institutions pursuant to professional judgment did not violate due process right to liberty of movement).

Had this case gone to trial, it would not have been sufficient for plaintiffs to demonstrate that confinement in a CLA would be in the best interests of members of the class. In the present state of the law regarding the rights of the mentally retarded, plaintiffs might have had to prove that the decision keeping them at Woodhaven was irrational and not based on professional judgment. There is the possibility that plaintiffs would not have been able to meet this burden. Settlement allowed plaintiffs to avoid the risk involved in continuing to litigate against defendants.

### B. Reaction of the Class

Pursuant to the court Order of September 13, 1985, notice of the proposed settlement was sent by first class mail to all members of the class as well as to their families. There are 115 class members; there were only eight objections filed. Ninety-three percent of the class appear to favor the agreement. Despite this overwhelming approval, the stated concerns of the objectors, one a distinguished jurist who appeared to testify, have been given the thoughtful consideration they deserve. But these concerns do not merit disapproval of the settlement agreement.

Some objectors believed that their relatives should be allowed to remain in Woodhaven rather than be placed in CLAs. But nothing in the settlement agreement requires, mandates, or otherwise orders that class members be placed in CLAs. It only provides the opportunity for community placement on an individual basis where the treatment team has made such a recommendation.

There was some concern that because the terms "community living arrangement" and "interdisciplinary team" are not defined in the settlement agreement, class members may be subjected to inappropriate placements. But these phrases are terms of art well known to mental health profes-

sionals, to the parties to this settlement, and to those affected by it so that it was not necessary for the terms to be defined in the agreement.

For purposes of this litigation, CLAs are understood to be home-like residential facilities providing services to small numbers of individuals, usually less than twelve per unit. An interdisciplinary team is comprised of Woodhaven staff persons, personnel from the County of Philadelphia Office of Mental Health/Mental Retardation, medical personnel, and representatives of the class member's family. The settlement agreement expressly provides that no class member shall be moved merely to meet a settlement timetable if an appropriate placement is unavailable. The class member, his or her parents, guardian or other family representative, will play a significant role in the decision as to whether a placement is appropriate.

There was also some concern that the provision of funding to the City for CLAs will predispose the parties to place plaintiff class members in CLAs regardless of appropriateness for the individuals involved. This assumes that the interdisciplinary team will not perform its duty to base decisions on accepted professional judgment, practice or standards. The court has no present reason to make such an assumption.

It was argued that the settlement agreement should be disapproved unless the parent, guardian or next friend is provided with an absolute veto over any interdisciplinary team decision. Parents currently do not have such a right by statute or common law and such a right is not mandated by the Constitution. In *Halderman v. Pennhurst State School and Hospital,* 707 F.2d 702 (3d Cir.1983), the constitutional right of parents regarding transfer of a voluntarily committed child to a CLA was acknowledged:

Parents have a substantial constitutional right, as head of the family unit, to direct and control the upbringing and development of their minor children. If the parental decisions amount to abuse or neglect of a minor child then the parental right is no longer constitutionally protected, and the state, as parens patriae, may intervene to protect the child. Absent a showing of abuse and neglect, however, the parental right remains substantial and may be subject to governmental interference only when such interference is supported by a significant government interest.

*Id.* at 709.

The settlement agreement ensures that parents play a substantial role in the placement decision-making process. Paragraph nine of the agreement provides:

Plaintiff class members and their parents and/or guardians, or closest relatives, will have a significant role in the placement decision-making process. As members of the interdisciplinary team, and as important participants, the input of class members and parents or guardians, or closest relatives shall be encouraged and respected by the other members of the team who shall be sensitive and respond to their feelings and concerns.

This ensures that where there is no abuse or neglect by the parents, the substantial parental right remains protected by a significant role in the placement decision-making process; not only is the importance of their participation acknowledged, it is to be encouraged and respected. The substantial right of parents or guardians or closest relatives will be subject to governmental interference only if such interference can be supported by a significant government interest. Because the *Halderman* holding informs the interpretation of the settlement agreement, it comports with the parents' substantive rights.

The procedural right of class members and parents to appeal a placement recommendation is also protected. Class members and parents dissatisfied with a placement recommendation can file an administrative appeal at Woodhaven. If still dissatisfied, they can seek a judicial determination in a Pennsylvania Court of Common Pleas. *See DPW v. Court of Common Pleas,* 506 Pa. 410, 485 A.2d 755 (1984).

Nothing in the settlement agreement restricts or eliminates these rights.

The failure of the notice of proposed settlement to inform the class of plaintiffs' attorneys' agreement with defendants on attorneys' fees did not deprive the class of information relevant to the propriety of the settlement. Counsel's fees are not coming from the settlement fund and no class member will pay any portion of them. Although class counsel is entitled to a fee by statute, negotiation of the fee after the agreement of settlement had been reached was the professional duty of the attorneys. *See Prandini v. National Tea Company,* 557 F.2d 1015 (3d Cir.1977).[4] Therefore, the fee had not been agreed upon when the agreement was presented to the court for approval and notice to the class was directed.

It is now alleged that negotiating the fee created a conflict of interest because the funds expended for the attorneys could have been spent for services to the plaintiff class. But there is no reason to believe that the money the state has agreed to pay counsel for the class would otherwise have been designated for mental health institutions. Where counsel fees are mandated by statute, counsel should be commended not criticized for reaching agreement without requiring court action. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

Objectors seek to preclude exclusive use of the state funds made available to the City for CLAs so that some of the funds can provide intermediate care facilities if neither Woodhaven nor a CLA is an appropriate placement for some member of the class. This relief has not been sought by the class nor negotiated in settlement; if the settlement were disapproved and the case tried, this relief would be unobtainable by this litigation. Whatever the merit of intermediate care facilities, providing them where needed is not a reason to disapprove the settlement of this action.

Finally, it is argued that the settlement should not be approved because there was no precertification notice. There is no requirement of precertification notice, regardless of whether the class has been certified pursuant to Fed.R.Civ.P. 23(b)(1), 23(b)(2) or 23(b)(3). It is notice of a proposed compromise that is required "in such manner as the court directs." Fed.R.Civ.P. 23(e). The court complied with Fed.R. Civ.P. 23(e) by ordering notice of the proposed settlement sent by first class mail to all class members as well as to parents, guardians or family representatives. Any additional notice in a Rule 23(b)(2) case is not obligatory but discretionary with the court. *Cf.* Fed.R.Civ.P. 23(c)(2) and 23(d); *Walsh v. Great Atlantic and Pacific Tea Company, Inc.,* 726 F.2d 956, 962 (3d Cir. 1983). No other notice was necessary or appropriate in the circumstances of this action.

### C. Negotiation Process

Although the court must independently evaluate the proposed settlement, the professional judgment of counsel involved in the litigation is entitled to significant weight. This agreement was negotiated on behalf of plaintiffs by highly experienced counsel. Edmond A. Tiryak, Esquire, Andrew F. Erba, Esquire and their associates have successfully litigated numerous class actions and are committed to and knowledgeable of the rights of the mentally handicapped. Mr. Tiryak and Mr. Erba were personally involved in the settlement negotiations and the decision to accept the settlement agreement on behalf of the class was made after thorough evaluation of all relevant factors, including the strengths and weaknesses of their case, the competence, expertise and tenacity of opposing counsel, and the politics of aid to the handicapped. Their recommendation favors the court's approval.

---

**4.** While it was not necessary for the agreement on attorneys' fees to have been included in the notice of proposed settlement, the court express-es no view on whether defendants can refuse to disclose the amount of said fees on request.

### D. Benefit to the Class

Plaintiffs' goal in instituting this action was to remove mentally retarded residents who no longer need institutionalization from Woodhaven and place them in less restrictive living arrangements. Under the settlement agreement, the Department of Public Welfare for the Commonwealth of Pennsylvania has agreed to provide sufficient funding to the Philadelphia Office of Mental Health/Mental Retardation for the placement of at least 23 members of plaintiffs' class in CLAs each year, beginning in 1986, so that by the end of 1991, at the latest, all class members who should be placed in CLAs will be so placed.

Implementation of the agreement is contingent upon the availability of state funds. In the event that there are insufficient funds, plaintiffs retain the right to litigate their claims. But the court is convinced there will be sufficient funding; it is likely that defendants settled this case not only to avoid the costs and risks of trial but also because deinstitutionalization is consistent with defendants' long-range plans for expansion of community services. The parties strongly desire that the agreement be implemented; their sincerity and determination should help to assure the funding necessary to avoid the undesirable renewal of this litigation with the attendant risk and expense to all parties. Although the court was originally concerned about the contingent nature of the settlement, these factors and the identity of the funding contingency clause here to that in *Pennhurst* (negotiated under the guidance of the Honorable Max Rosenn, Senior Circuit Judge of the Third Circuit Court of Appeals), approved by The Honorable Raymond J. Broderick persuades the court this is not a valid reason for disapproving the settlement. *See Halderman v. Pennhurst State School and Hospital,* 610 F.Supp. 1221 (E.D.Pa.1985). If the state provides the promised funding, the class will recover over time everything initially sought. If not, it has the renewed right to litigate. Because of the likelihood of good faith compliance, the settlement should be approved.

This case has been pending for a considerable time on the court's docket; its trial would be complex, expensive, and inevitably result in extended appeals because it presents novel issues with regard to the rights of the institutionalized mentally retarded. It has settled at a stage of the proceedings permitting the parties and the court realistically to evaluate the risks of establishing liability and the extent of the relief that might be awarded after a trial. It is clear to the court from personal participation in the settlement process with the approval of the parties that: 1) the defendants will not agree to more favorable settlement terms; and 2) the settlement is clearly within the range of reasonableness for plaintiffs when the likelihood of being the prevailing party and the best possible recovery if the prevailing party are considered. Therefore, after full consideration of all relevant factors, the court approves this settlement as fair, reasonable and adequate.