Pamela HANSON, By and Through her parents and next friends, Steven and Beverly HANSON, on behalf of herself and all other persons similarly situated, Appellants,

v.

CLARKE COUNTY, IOWA, a political subdivision of the State of Iowa; Kent White, Leonard Siefkas, and Terry Robins, individually and in their official capacities as members of the Clarke County Board of Supervisors, Appellees.

No. 88–1116.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 20, 1988.

Decided Feb. 10, 1989.

Sondra B. Kaska, Iowa City, Iowa, for appellants.

Carlton G. Salmons, Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, and McMILLIAN and WOLLMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Pamela Hanson appeals from a final judgment entered in the District Court[1] for the Southern District of Iowa dismissing her civil rights complaint brought under 42 U.S.C. § 1983 on the alternative grounds that it is moot and that it failed to state a claim upon which relief can be granted. For reversal, Hanson argues that the district court erred in (1) dismissing her complaint as moot both because the controversy is capable of repetition and because the issue of damages keeps it alive, (2) finding that she does not have a substantive due process right to placement in the least restrictive living environment consistent with qualified professional judgment, and (3) refusing to address her procedural due process claims. For the reasons discussed below, we affirm the judgment of the district court.

Hanson has Prader–Willi Syndrome (PWS), a serious but rare genetic disorder of the hypothalamic/pituitary axis of the brain. PWS causes insatiable appetite which can lead to morbid obesity and other medical complications if the food intake of the PWS sufferer is not carefully controlled. PWS sufferers are short, have poor muscle tone, and have great difficulty losing weight. Additional symptoms of PWS are manipulative behavior directed toward acquiring food, ingestion of unusual or inedible substances, and temper tantrums and emotional outbursts. Many PWS sufferers, including Hanson, are mildly mentally retarded. PWS cannot be effectively treated by medication.

Hanson lived with her parents until she was twenty-one years old. In November 1983, when her parents were no longer able to cope with her behavioral and eating

---

1. The Honorable R.E. Longstaff, United States Magistrate for the Southern District of Iowa.

The case was tried to a magistrate by consent of the parties. *See* 28 U.S.C. § 636(c).

problems, Hanson moved to a supervised apartment operated by Central Iowa Residential Services, Inc. (CIRSI), in Marshalltown, Iowa. While residing at the CIRSI apartment, Hanson worked at the Career Development Center (CDC) and did volunteer work at a local day care center. Funding for Hanson's placement at the CIRSI apartment and day programming was provided by Clarke County, Iowa, in accordance with Iowa Code § 222.60 (1985) which provides in part:

All necessary and legal expenses for the cost of admission or commitment or for the treatment, training, instruction, care, habilitation, support and transportation of patients in a state hospital-school for the mentally retarded, or in a special unit, or any public or private facility within or without the state, approved by the commissioner of the department of human services, shall be paid by ...:

1. The county in which such person has legal settlement....

In September 1986 the CIRSI staff decided that Hanson's behavioral problems had been brought under control. They determined that a more appropriate work placement for her would be in a sheltered workshop setting. Hanson began working at the Mid–Iowa Workshop (workshop) on the recommendation of the CIRSI and CDC staff.

At the workshop, Hanson had unrestricted access to vending machines and was able to manipulate food from other workshop employees. Within a short period of time, her weight ballooned from 185 pounds to 230 pounds. The weight gain caused Hanson to suffer respiratory arrest in November 1986. She underwent a permanent tracheostomy at the University of Iowa Hospital in Iowa City, Iowa. Hanson subsequently entered the University of Iowa Prader–Willi Syndrome Clinic (PWS Clinic) for weight loss and sleep apnea studies. She lost seven pounds during her hospitalization for the tracheostomy and eleven pounds during her stay at the PWS Clinic.

Hanson was unable to return to the CIRSI apartment because the staff could not provide her with tracheostomy care and oxygen at night. Attempts were made by Hanson's parents and the Clarke County, Iowa, Department of Human Services to locate an appropriate placement for Hanson in Iowa. The Hansons were unable to locate such a placement and began looking for an out-of-state placement that could accommodate her needs.

The Hansons found a group home, Oconomowoc Developmental Training Center, Inc. (Oconomowoc), located in Oconomowoc, Wisconsin, which was specifically designed to deal with the behavioral and weight control problems of persons with PWS. They asked the Clarke County Board (Board) to fund Hanson's placement at Oconomowoc. The Board had not acted upon their request for funding at the time of Hanson's discharge from the PWS Clinic on February 20, 1987.

Pending action on their funding request, the Hansons placed their daughter in Hillside Manor, a 150-bed nursing home licensed as an intermediate care facility for the mentally retarded (ICF–MR). Hanson's placement at Hillside Manor was based on the recommendation of the Clarke County Department of Human Services. An ICF–MR was selected as an appropriate placement for Hanson because of her oxygen and tracheostomy needs. Hanson's parents thought that the Hillside Manor placement was to be temporary. They were immediately unhappy with the placement, believing it to be inappropriate for Hanson. They removed her from Hillside Manor seven days after she was placed there and took her to their home on February 27, 1987.

In March 1987, Dr. Louise Greenswag, a psychologist and nurse who is an expert on PWS and who is familiar with Hanson's needs, made a presentation to the Board on PWS. Dr. Greenswag informed the Board that she was of the opinion that there was no Iowa facility which would be an appropriate placement for Hanson. She recommended that Hanson be placed in Oconomowoc. The physician who treated Hanson during her hospitalization at the University of Iowa Hospital informed the Board by

letter that Hanson's tracheostomy and oxygen needs should not impede her placement at Oconomowoc as long as arrangements were agreed upon in advance by the Hansons and Oconomowoc.

The Board initially denied the Hansons' request for funding Hanson's placement at Oconomowoc. The Board's decision was based on the fact that Oconomowoc was not recommended by the Iowa Foundation for Medical Care (Foundation).[2] *See* Iowa Code § 249A.12(2) (1985). The Foundation later evaluated Oconomowoc at the Hansons' request and found that it would be an appropriate placement for Hanson. The Iowa Department of Human Services (Department) concluded that there was no appropriate placement in Iowa for Hanson and advocated her placement at Oconomowoc should funding become available.

Based on the information supporting Hanson's placement at Oconomowoc, the Board reversed its position and authorized her placement there. It authorized funding forty percent of the total cost of Hanson's placement at Oconomowoc.[3] The Board was afraid that it would be setting precedent if it agreed to fully fund the Oconomowoc placement. It expressed concern that other clients funded by the Board would view such an action as a signal that they would be free to select whatever facility they chose and receive full Board funding for placement there no matter where it was located or what it cost. The Board also considered the cost of the placement to be extremely high and noted that it had a responsibility to Clarke County taxpayers.

The Hansons filed a Motion for Preliminary Injunction in federal district court to compel the Board to fully fund Hanson's placement at Oconomowoc. The district court denied injunctive relief on the ground that the Hansons would be unlikely to prevail on the merits. *Hanson v. Clarke County*, No. 87–442, slip op. at 13 (S.D. Iowa Oct. 20, 1987). Cross-motions for summary judgment had been filed, and while a decision on these was still pending, the Department volunteered to make an exception to its policy and pay the difference between the amount of funding provided by the Board and the cost of the Oconomowoc placement. The Department reaffirmed its desire to place Hanson in an appropriate facility in Iowa as soon as possible. In a letter dated November 7, 1987, the Department stated that this policy exception would be reviewed after one year. The district court subsequently granted summary judgment in favor of the defendants, ruling that the voluntary action of the Department rendered the case moot. *Hanson v. Clarke County*, No. 87–442, slip op. at 12 (S.D.Iowa Dec. 22, 1987) (*Hanson*).

*Mootness*

■ Hanson first argues that the district court erred in dismissing her claim as moot. Defendants join her in arguing that this ruling was in error. Hanson argues the actions complained of in this case are "capable of repetition, yet evading review," *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982), and that the case therefore falls within the well-recognized exception to the mootness doctrine. Hanson's argument is based on the fact that the balance of her funding needs for the Oconomowoc placement is being provided by the Department through a policy exception which is both voluntary

---

**2.** The Iowa Foundation for Medical Care is a private review organization of physicians with which the Iowa Department of Human Services contracts to review care facilities in Iowa.

**3.** The cost of Hanson's placement at Hillside Manor was $74 per day. Because Hillside Manor is an ICF–MR, federal funds paid 60% of the costs associated with Hanson's placement there. 42 U.S.C. § 1396 *et seq.* (Medicaid). Iowa law requires Clarke County to pay the amount of an ICF–MR placement not paid for by Medicaid funds. Iowa Code § 249A.12(2) (1985). Clarke County's share of the cost of Hanson's placement at Hillside Manor was about $30 per day. Oconomowoc costs $75 per day. However, because it is licensed in Wisconsin as a Residential Care Facility and had not been licensed by the State of Iowa, the Department determined that the Oconomowoc placement could not be paid for with Medicaid funds. The result is that, despite the similarity in daily costs between the two facilities, the actual cost to Clarke County for the Oconomowoc placement if it paid 100% of the Oconomowoc expenses would be approximately $1,300 per month greater than for the Hillside Manor placement.

and subject to review by the Department, an entity which is not a party to this lawsuit. Hanson contends that because the Board has not changed its position on the underlying issue of fully funding her placement at Oconomowoc, and the Department could theoretically cut off its funding at any time, her claim is likely to arise again against the same defendants. *See Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 601 n. 6, 98 L.Ed.2d 686 (1988) (*Honig*). Hanson and defendants also argue that Hanson's claims for compensatory and punitive damages keep the case alive. *See Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 2417 n. 1, 96 L.Ed.2d 303 (1987). We agree with the parties that the case is not moot.

Article III of the United States Constitution requires that there be an actual controversy capable of resolution by a court in order for a federal court to have jurisdiction over a case. *See, e.g., Honig*, 108 S.Ct. at 601. "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. Additionally, the controversy must be one for which the court can grant specific and conclusive relief." *Carson v. Pierce*, 719 F.2d 931, 933 (8th Cir.1983). The requirement of an actual controversy continues throughout the case so that a case presenting live issues at the time it was filed may become moot before it goes to trial. *See Honig*, 108 S.Ct. at 601.

The district court correctly noted that the mootness issue in this case is "far from clear cut." *Hanson*, slip op. at 5. While we are inclined to agree with its assessment that the efforts of both the Board and the Department to place Hanson have been made in good faith and not in an attempt to evade review, *see Ellis v. Blum*, 643 F.2d 68, 83 n. 16 (2d Cir.1981); 13A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3533.8, at 379–80 (2d ed. 1984) (intent to benefit plaintiff as opposed to attempt to evade review relevant in determining whether controversy is likely to recur), we hold that the case is not moot because the issue of damages presents a live controversy to be resolved.

The district court did not address the existence of a claim for damages in its analysis of the mootness issue. However, if Hanson had shown that she had been unconstitutionally deprived of a protected liberty or property right, that is, the right to have her placement at Oconomowoc fully funded by the Board, she may have been entitled to damages from members of the Board. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 920, 99 L.Ed.2d 107 (1988).

Having decided that a live controversy exists, we turn now to the merits of the case.

*Substantive Due Process*

■ Hanson argues that she has a liberty interest protected by the due process clause of the fourteenth amendment to the United States Constitution in being placed in an environment that is no more restrictive than is considered appropriate by "qualified professionals." Dr. Greenswag, as well as Dr. Kenneth Keith, a psychologist with expertise in programming care for the mentally retarded, and Gary Gesaman, Manager of the Long Term Care Section of the Bureau of Medical Services for the Department, believed that an ICF–MR placement would be overly restrictive for someone with Hanson's needs and abilities. Dr. Greenswag and Gary Gesaman both recommended that Hanson be . placed at Oconomowoc. Hanson contends that the specific recommendation of these "qualified professionals" that she be placed in a group home such as Oconomowoc rather than in an ICF–MR such as Hillside Manor vests in her a substantive due process right to such a placement.

Hanson grounds her substantive due process argument in the holding of *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (*Youngberg*). *Youngberg* held that mentally retarded persons who have been involuntarily committed to state institutions retain constitutionally protected liberty interests in "conditions of reasonable care and safety, reasonably non-restrictive confinement conditions, and such training as may be required by those interests." *Id.* at 324, 102 S.Ct. at 2462.

In determining whether these conditions have been met, "decisions made by the appropriate professional are entitled to a presumption of correctness." *Id.* Hanson argues that the *Youngberg* holding applies with equal weight to those who have been voluntarily institutionalized. *See, e.g., Association for Retarded Citizens v. Olson,* 561 F.Supp. 473 (D.N.D.1982) (*Olson*), aff'd on state law grounds, 713 F.2d 1384 (8th Cir.1983). Hanson contends that the Board has a constitutional duty to fund the exercise of her alleged constitutional right to placement in the "least restrictive environment consistent with qualified professional judgment." *See* 1986 Op. Att'y Gen. 4, 5 (No. 86–10–5(L)) (Iowa attorney general's interpretation of § 222.60 to the effect that while the Board has broad discretion in determining what expenses are necessary, rejection of professional judgment as to necessity should have reasonable basis). We disagree.

While it is clear that the Iowa statutory scheme creates a substantive right to appropriate care and treatment, neither the state law nor the liberty interests explicated in *Youngberg* create a substantive due process right to optimal care and treatment.

The cases relied upon by Hanson are inapposite. *Youngberg* recognizes that the *involuntarily committed* retain liberty interests in safety, freedom from bodily restraint and suitable training. 457 U.S. at 324, 102 S.Ct. at 2462 (emphasis added). Even if the *Youngberg* holding could be properly extended to a case such as this where the plaintiff has been voluntarily institutionalized, it would be of no help to Hanson. The rights recognized by the *Youngberg* Court are not absolute. The *Youngberg* opinion recognizes that these rights are qualified and must be balanced against important state interests. *Id.* at 321, 102 S.Ct. at 2461. More importantly, *Youngberg* recognizes a right to *minimally adequate* training," not optimal training. *Id.* at 322, 102 S.Ct. at 2461 (emphasis added). There is no question that the Oconomowoc placement is the optimal placement for Hanson. All of the parties and the experts agree on that point. She has,

however, no constitutional right to such a placement. She has only a right under the Iowa statutory scheme to an adequate placement. Further, the other cases relied upon by Hanson do not hold that she is entitled to choose the least restrictive environment in a private institution and then compel the state to fund that placement. Rather, these cases hold that once an individual is institutionalized in a state institution, he or she is entitled to the least amount of bodily restraint possible under the circumstances. *See, e.g., Olson,* 561 F.Supp. at 485.

Finally, even if we were to hold that, under state law, Hanson is entitled to fully funded placement in an optimal environment, we have serious reservations as to whether a federal court could compel defendants to comply with state law. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

*Procedural Due Process*

Hanson next argues that the district court erred in not addressing her claim that defendants deprived her of a substantive right to state benefits without due process of law. Given our holding that the district court correctly decided that Hanson did not possess any of the substantive rights which she claims she was deprived of by the Board, we find it unnecessary to address her procedural due process claim.

Accordingly, the judgment of the district court is affirmed.

Given our disposition of the case, defendants' post-argument motion to strike the letter and accompanying materials submitted to the court by counsel for Hanson is denied as moot.