**Evert CONNER, et al., Plaintiffs,**

v.

**Terry BRANSTAD, et al., Defendants.**

No. 4–86–CV–30871.

United States District Court, S.D. Iowa, C.D.

Dec. 9, 1993.

Sondra B. Kaska, Iowa City, IA, and Richard A. Pundt, Cedar Rapids, IA, for plaintiffs.

Gordon E. Allen, Asst. Atty. Gen. for the State of Iowa.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, United States Magistrate Judge.

This is a class action lawsuit in which Plaintiffs' class, a group of institutionalized mentally and physically disabled individuals, challenges the State of Iowa's system for providing services to individuals with mental and physical disabilities as violating federal statutory and constitutional principles. Specifically, this litigation arises from Defendants' continued providing of services to Plaintiffs' class in an institutional setting rather than in a community based environment advocated by Plaintiffs.[1]

## I. INTRODUCTION AND BACKGROUND

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Defendants' motion raises thorny legal questions regarding discernment of the living environment and habilitation to which Plaintiffs are entitled under the Due Process Clause of the Fourteenth Amendment and a multiple of federal civil rights statutes. A hearing on Defendants' motion was held on October 7, 1993. Plaintiffs were represented at the hearing by Sondra B. Kaska of Iowa City, Iowa and Richard A. Pundt of Cedar Rapids, Iowa, and Defendants were represented by Gordon E. Allen, Assistant Attorney General for the State of

Iowa. On December 3, 1993, Plaintiffs filed their Supplemental Brief in Support of Plaintiffs' Resistance to Motion for Summary Judgment. On December 6, 1993, Defendants filed their Reply to Supplemental Brief of Plaintiffs. The matter is now fully submitted.

This case recently had its seventh anniversary; Plaintiffs having filed their initial complaint in this litigation on December 8, 1986.[2] Some of the history of this lengthy litigation bears being set out. On September 8, 1987, Judge Vietor conditionally certified a class to consist of "all persons who are or who may become residents of Glenwood or Woodward State Hospital–Schools and who could be appropriately placed in community-based living environments but who remain institutionalized." On July 8, 1988, this case was placed on Judge Vietor's trial calendar for November 14, 1988. Almost immediately, Plaintiffs moved to continue the trial date. On September 12, 1988, Judge Vietor granted the first of five trial continuances in this matter. On December 7, 1988, the case was transferred to the docket of Judge Stuart. On April 2, 1993, the parties consented to proceed before the undersigned. On May 27, 1993, the court set this matter for trial commencing on February 8, 1994.

Despite the age of this case, the parties have engaged in several recent exercises in legal jousting. On November 4, 1993, the court denied Defendant's Motion for Joinder of Parties in which Defendants sought to join all 99 Iowa counties as a class defendant in this case. On the same date, the court also rejected Defendants' attempt to decertify Plaintiffs' class. On November 17, 1993, the court denied Defendants' latest motion for a continuance of the trial. Also on November 17, 1993, the court granted an eleventh hour motion to intervene by parents and guardians of Woodward and Glenwood residents,

---

1. This lawsuit is brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485; Title XIX of the Social Security Act, 42 U.S.C. § 1396d; and the Due Process Clause of

the Fourteenth Amendment of the United States Constitution.

2. Since filing their initial complaint, Plaintiffs have filed four amended and substituted complaints. The last of these amended and substituted complaints was filed on February 25, 1993.

and the bargaining unit employees at those institutions.

## II. FINDINGS OF FACT

### A. Undisputed Facts.

For the purposes of the summary judgement motion only, the court finds the following facts:

1. Plaintiffs' class consists of all individuals who are or may become residents of Glenwood and Woodward State Hospital Schools and who could be placed in community based residential facilities but who remain at Glenwood and Woodward.[3]

2. Residents of Glenwood and Woodward are persons with disabilities, as that term is defined under the Rehabilitation Act of 1973.

3. An undisclosed number of Glenwood and Woodward residents are children, ages birth through 21, who are covered under the IDEA.

4. Glenwood and Woodward are both owned and operated by the State of Iowa. Both facilities have been certified as Intermediate Care Facilities for the Mentally Retarded ("ICF/MR's") pursuant to Title XIX, 42 U.S.C. § 1396d.

5. Glenwood and Woodward had a combined population of 822 residents as of July 1, 1993.

6. Approximately 98 to 99 percent of Glenwood and Woodward residents qualify for Medicaid.

7. Federal funds provide approximately 66 percent of the cost of care and services for residents at Glenwood and Woodward. Pursuant to Iowa law, the counties of legal settlement of Glenwood residents are billed for 80 percent of the non-federal share of their residents' costs. The counties of legal settlement of Woodward are billed for 84 percent of the non-federal costs. For non-medicaid eligible residents, the counties are billed for 80 percent of the cost of care.

8. Community based facilities for mentally retarded individuals are operated by private entities. There are 72 providers certified as ICF/MR's in Iowa.

9. Defendant Charles M. Palmer is the director of the Department of Human Services ("DHS") for the State of Iowa.

10. DHS is responsible for providing services and programs for the mentally retarded and developmentally disabled.

11. Defendant Terry Branstad is the Governor of the State of Iowa. Defendant Branstad, in his capacity as Iowa's Governor, is responsible for ensuring that the laws are faithfully executed in the State of Iowa.

12. Defendant William E. Campbell is the Superintendent of Glenwood.

13. Defendant Michael Davis is the Superintendent of Woodward.

### B. Disputed Facts

1. Are the Plaintiff residents of Glenwood and Woodward who are covered under IDEA being provided with an appropriate public education tailored to meet the unique needs of each resident pursuant to each resident's individual assessments.

2. Are Plaintiffs "otherwise qualified" for placement in community based ICF/MR's?

3. Are Plaintiffs being excluded from these programs solely by reason of the severity and multiplicity of their handicaps and whether Defendants could have made reasonable accommodations for Plaintiffs' handicaps?

4. Do the conditions and habilitative services provided to residents of Glenwood and Woodward substantially meet professionally accepted minimum standards for care and habilitation?

5. Are the minimum standards of care and habilitation established by Title XIX being met in Woodward and Glenwood?

---

3. There are seven named representative of Plaintiffs' class: Evert Conner, Pauline Crouse, Michael Monahan, Amanda Poulos, Archie Pratt, Pamela Schuler, and Jennalee Sturtz. The other named Plaintiff is the Iowa Protection and Advocacy Services, Inc. The court was informed by Plaintiffs' counsel at the time of the hearing on this motion that Mr. Conner is now deceased.

**1350**

### III. CONCLUSIONS OF LAW

Defendants' Motion for Summary Judgment presents the court with a host of issues all related to Plaintiffs' continued residence and receipt of habilitation services at Glenwood and Woodward. Following an overview of the standards for considering a motion for summary judgment, the court will first consider the issue of whether the Due Process Clause of the Fourteenth Amendment requires that Plaintiffs receive habilitation services in the least restrictive setting consistent with qualified professional judgment. Next, the court must consider whether Plaintiffs have received minimally adequate habilitation consistent with qualified professional judgment. Third, the court will address Plaintiffs' claim that they are entitled by procedural due process to periodic hearings. Following that discussion, the court will then turn its attention to the issue of whether Plaintiffs may enforce the Medicaid provisions of Title XIX through a lawsuit brought pursuant to 42 U.S.C. § 1983. Fifth, the court will discuss the validity of Plaintiffs' claims brought pursuant to section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act. Finally, the court will consider Plaintiffs' claims under the Individuals with Disabilities Education Act.

### A. Standards for Summary Judgment.

The standard for granting summary judgment is firmly established. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990) (citing Fed.R.Civ.P. 56(c)); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990).[4] A court considering a

motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here the named Plaintiff and class members, and give these Plaintiffs the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991).

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini*, 900 F.2d at 1238. The Eighth Circuit, however, also follows the principle that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553). The moving party is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. A nonmoving party is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers

---

**4.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is

material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The necessary proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

In *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita*, 475 U.S. at 586–87, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law". *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247.

### B. Specific Claims at Issue.

■ **(1). Least Restrictive Environment.** The initial issue raised by Defendants' Motion for Summary Judgment is whether Plaintiffs have a constitutionally protected right in residing in the least restrictive living environment consistent with qualified professional judgment.

In *Youngberg v. Romeo*, 457 U.S. 307, 315–22, 102 S.Ct. 2452, 2457–61, 73 L.Ed.2d 28 (1982), the Supreme Court concluded that substantive due process under the Fourteenth Amendment imposes two duties on states concerning the care and training they are obligated to provide institutionalized individuals under their care. First, the states are obligated under the Due Process Clause to provide safe living conditions, freedom from bodily restraint, and minimally adequate training. *Id.* at 319–320, 102 S.Ct. at 2459–60. In conjunction with this duty to train, the Supreme Court held that states have an obligation to provide such training as "an appropriate professional would consider reasonable to ensure [an individual's] safety and to facilitate his ability to function free from bodily restraints." *Id.* at 324, 102 S.Ct. at 2462. Second, the Supreme Court established in *Youngberg* that the state are required to make certain that professional judgment is being exercised in making those decisions concerning the care and training of institutionalized individuals. *Id.* at 321, 102 S.Ct. at 2461.

Following the Supreme Court's decision in *Youngberg*, several circuits have uniformly concluded that there is no federal right to treatment in the least restrictive setting. *Lelsz v. Kavanagh*, 807 F.2d 1243, 1251 (5th Cir.1987); *Society for Good Will to Retarded Children v. Cuomo*, 737 F.2d 1239, 1249 (2d Cir.1984) (*Society for Good Will I*); *Phillips v. Thompson*, 715 F.2d 365, 368 (7th Cir. 1983); *see Jackson v. Fort Stanton Hosp. & Training Sch.*, 964 F.2d 980, 992 (10th Cir. 1992) (noting that "[c]ommunity placement is only one of various possible ways in which the state may comply with its constitutional obligations to adequately care for and train involuntarily committed individuals."); *cf. Hanson ex rel. Hanson v. Clarke County, Iowa*, 867 F.2d 1115, 1120 (8th Cir.1989) (denying plaintiff's contention that she had right to funding for placement in the "least restrictive environment consistent with qualified professional judgment.").[5] Following this

---

5. It bears mentioning that at the time that this lawsuit was commenced, some case law from other districts, but no circuit courts of appeal, supported Plaintiffs' theory of a right to habilita-

considerable case authority, the court concludes that the United States Constitution does not require that the Plaintiff class members be provided habilitation in the least restrictive environment. *Lelsz,* 807 F.2d at 1251. This conclusion, however, still leaves open the question of whether qualified professional judgment is being exercised here with respect to treatment of plaintiffs.

■ *(2). Qualified Professional Judgment.* As noted above, even if Plaintiffs do not have a right to habilitation in the least restrictive setting, the issue remains whether Plaintiffs have received minimally adequate habilitation consistent with qualified professional judgment. The Second Circuit Court of Appeals explained the role of experts in evaluating what constitutes the minimum professional standards:

> "[T]he role of the experts is only to assist the court in ascertaining what the minimum professional standard is ...." [*Society for Good Will I,*] 737 F.2d at 1248. Expert reports and testimony should be used only to establish the general parameters of acceptable, constitutional activity, and not whether the exercised professional was indisputably correct and unassailable—or for that matter even a better approach to the problem. The district court's role in this respect was not to evaluate different choices and determine which of these choices were better; rather, the court was required to evaluate the challenged treatment to determine whether such treatment had substantially met professionally accepted standards.

tion in the least restrictive setting. *See Philipp v. Carey,* 517 F.Supp. 513, 518 (N.D.N.Y.1981); *Society for Good Will to Retarded Children, Inc. v. Cuomo,* 572 F.Supp. 1300, 1347 (E.D.N.Y.1983), *vacated,* 737 F.2d 1239 (2nd Cir.1984); *cf. Lelsz v. Kavanagh,* 629 F.Supp. 1487, 1495 (N.D.Tex. 1986) (enforcing consent decree provision for community placement), *vacated,* 807 F.2d 1243 (5th Cir.1987). Regrettably, in this court's view the legal winds have since shifted to the detriment of Plaintiffs' position.

**6.** Defendants have submitted the affidavits of Charles M. Palmer (Ex. A); Michael J. Levine (Ex. B); Richard Saunders (Ex. D); Alfred A.

*Society for Good Will to Retarded Children v. Cuomo,* 902 F.2d 1085, 1089–90 (2d Cir. 1990) (*Society for Good Will II* ).

In support of their motion for summary judgment, Defendants have submitted the affidavits of eleven professionals.[6] Nine of these professionals specifically opine in their affidavits that the care and treatment provided at both Woodward and Glenwood either meet or exceed professionally acceptable treatment.[7] Each of these nine experts renders his or her opinion on a different aspect of care and treatment at Glenwood and Woodward. The court concludes that Defendants have carried their initial burden under Federal Rule of Civil Procedure 56(c) of demonstrating the lack of a genuine issue of material fact as to the question of whether Plaintiffs are receiving minimally adequate habilitation consistent with qualified professional judgment.

Plaintiffs have countered with portions of deposition testimony given by four experts.[8] First, Sue Gant avers in her deposition that the overall treatment at Woodward is not within the limits of professionally acceptable treatment, and is "barely minimally adequate." Gant Dep. at 191. Ms. Gant goes on to state that the overall treatment at Glenwood is "much less than even minimal." *Id.* at 192. Kathleen Moore testified at her deposition that Defendants have failed to provide Plaintiffs with minimally adequate training or habilitation to ensure them freedom from undue restraint, and that Defendants have failed to make appropriate placements available or to develop appropriate living environments for Plaintiffs. Moore Dep. at 170. Dr. Philip R. Ziring stated in his deposition that the neurological services, use of

Baumeister (Exs. F–G); Justine Joan Sheppard (Ex. J); Johnny L. Matson (Ex. L); John French (Ex. N); John Marinkovich (Ex. P); Robert T. Sprague (Ex. R); Michael H. Hart (Ex. T); and Herbert Grossman (Ex. X).

**7.** The nine experts who found the treatment to meet professional standards were Levine, Saunders, Baumeister, Sheppard, Matson, French, Marinkovich, Grossman, Hart, and Sprague.

**8.** Plaintiffs have presented the testimony of Sue A. Gant, Phillip R. Ziring, Kathleen Moore, and Elizabeth Jones.

psychotropic drugs, and use of restraints by Defendants were "clearly below the standard of practice." Ziring Dep. at 78–79. Finally, Elizabeth Jones testified at her deposition that she believed that "Glenwood is a harmful, damaging place." Jones Dep. at 180. She was of the further opinion that Defendants had failed to provide Plaintiffs with minimally adequate treatment, training, or habilitation sufficient to ensure Plaintiffs freedom from undue restraint. *Id.* at 189–190. Through production of these depositions Plaintiffs have fulfilled their obligation under Rule 56(e) to designate "specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Given the diametrically opposed opinions of the parties' respective experts on the issue of whether Defendants are providing Plaintiffs with minimally adequate care and treatment, the court concludes that a question of material fact has been generated on this issue which precludes the granting of summary judgment. As the court noted above, *see supra* at 1349, " 'on summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *Diebold, Inc.,* 369 U.S. at 655, 82 S.Ct. at 994). Similarly, until the issue of what constitutes the minimally appropriate treatment and care for Plaintiffs is resolved, the closely related issue of whether the relief sought by Plaintiffs is appropriate cannot be resolved.

**■ (3). Procedural Due Process Claim.** Defendants next challenge Plaintiffs' claim that they are entitled by procedural due process "to periodic hearings to determine whether the bases for their confinements continue to exist." Count IV; Fourth

Am.Compl.[9] Defendants specifically argue that because Plaintiffs have pointed to no state created entitlement, Plaintiffs have no procedural due process right to periodic reviews.

In order to support a procedural due process claim, Plaintiffs must first show that they have been deprived of a significant interest protected under the Constitution. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). This interest can arise either from the Constitution itself or from state law. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983). Two United States Circuit Courts of Appeals have recognized that periodic review is required. In *Clark v. Cohen,* 794 F.2d 79, 86 (3rd Cir.), *cert. denied,* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986), the Third Circuit noted that "due process required periodic reviews of [a patient's] continuing need for institutionalization." The court went on to point out that "[p]eriodic reviews are required because if the basis for a commitment ceases to exist, continued confinement violates the substantive liberty interest in freedom from unnecessary restraint." *Id.* Similarly in *Doe ex rel. Doe v. Austin,* 848 F.2d 1386, 1395–96 (6th Cir.), *cert. denied sub. nom. Cowherd v. Doe ex rel. Doe,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 531 (1988), the Sixth Circuit stated, "Of course, because involuntary commitment cannot continue after the basis for that commitment ceases to exist, due process requires that some periodic review take place during confinement." [10]

The court, therefore, finds that because Plaintiffs do state a cognizable claim in Count IV of their latest amended complaint, this aspect of Defendants' Motion for Summary Judgment shall be denied.[11]

---

**9.** Defendants incorrectly attribute Plaintiffs' procedural due process claim to Count V.

**10.** Neither of the cases cited by Defendants is controlling on this issue. Indeed, neither the Supreme Court's decision in *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), nor its decision in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), dealt with individuals committed to state institu-

tions. The court, therefore, finds that those cases provide no guidance on this issue.

**11.** The record is murky at best as to whether Plaintiffs are at Glenwood and Woodward voluntarily, or whether they were involuntarily committed. Because resolution of this aspect of the motion for summary judgment is not dependent on the outcome of this factual query, it shall remain for the parties to develop this factual aspect at trial. The court, of course, expresses

**(4). Section 1983 Enforceability.** Defendants next challenge whether Plaintiffs may seek enforcement of Medicaid provisions of Title XIX of the Social Security Act, 42 U.S.C. § 1396d, pursuant to 42 U.S.C. § 1983.[12]

In *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), the Supreme Court held that § 1983 provides a mechanism to enforce violations of federal statutes as well as constitutional violations. Two exceptions to this general rule have developed. Under the first exception, no action under § 1983 is available where Congress did not intend the statute in question to create individually enforceable rights. The second exception arises when Congress creates exclusive remedies for the enforcement of a statute which precludes private enforcement under § 1983. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981). "[I]f there is a state deprivation of a 'right' secured by a federal statute, § 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright v. City of Roanoke Redevelopment & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987).

The Eighth Circuit recently set out in *Arkansas Medical Soc'y, Inc. v. Reynolds,* 6 F.3d 519 (8th Cir.1993), the appropriate framework that courts should employ in analyzing § 1983 enforceability questions:

The framework is really a two step process. In step one, a court must decide whether the claim actually involves a violation of a federal right, as opposed to a violation of federal law. For this first step, the plaintiff asserting the right has the burden. Factors which bear on the resolution of this question include: (a) whether the statutory provision in question was intended to benefit the plaintiff; (b) whether the statute creates a binding obligation on the state government as opposed to merely expressing a congressional preference; and (c) whether the interest asserted by the plaintiff is sufficiently specific and definite as to be within the competence of the judiciary to enforce. In the second step, the court must determine if Congress has foreclosed enforcement under § 1983. On this point, the defendant bears the burden and the inquiry focuses on whether Congress has provided a comprehensive and carefully tailored remedial scheme within the statute in question, so as to make enforcement under § 1983 inconsistent.

*Id.* at 523 (citations omitted). Applying this framework in *Reynolds,* the court of appeals concluded that an alleged violation of 42 U.S.C. § 1396a(a)(30)(A) by the Arkansas Department of Human Services gave rise to a cognizable 42 U.S.C. § 1983 action. *Id.* at 528; *see also Nebraska Health Care Ass'n v. Dunning,* 778 F.2d 1291, 1295 (8th Cir.1985) (holding that the Social Security Act "is a 'law' within meaning of 42 U.S.C. § 1983....").

As to step one, the court concludes that a federal right is provided for by the Social Security Act, 42 U.S.C. § 1396d. First, the court finds that Plaintiffs are the intended beneficiaries of § 1396d and the implementing regulations found in 42 C.F.R. ¶ 483. By way of example, both 42 C.F.R. ¶ 483.10 and ¶ 483.13 speak in terms of residents' "rights." Second, the court concludes that the language found in these laws is sufficiently mandatory to constitute a binding obligation on the part of the state here. The state is not merely providing regulatory oversight in this case, but is also wearing the hat of the care provider. It is the existence of this unusual fact which distinguishes this case from the likes of the Fifth Circuit's decision in *Stewart v. Bernstein,* 769 F.2d 1088 (5th Cir.1985),

---

no opinion as to what, if any, effect Plaintiffs' particular status might have on this particular claim.

**12.** It should be noted that Judge Vietor addressed this issue in his order denying Defen-

dants' Motion to Dismiss, and concluded that Plaintiffs stated a viable § 1983 claim in Count V. Ruling Den. Mot. to Dismiss and Order Permitting Am. at 2, June 22, 1987.

upon which Defendants cite in support of their position.[13] The implementing federal regulations repeatedly speak in terms of what the facility "must" provide to its residents. This language is not "merely precatory, it is imperative." *Reynolds,* 6 F.3d at 526. Finally, the court rejects Defendants' contention that the language contained in § 1396d and the implementing regulations are too vague or amorphous to enforce by way of § 1983. For the reasons stated above, the court finds that first prong of the test has been met here.

Turning to the second prong of the test, whether Congress has foreclosed enforcement under § 1983, the court finds this part of the test controlled by the Supreme Court's decision in *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). As the Eighth Circuit pointed out in *Reynolds:*

> As to the second prong of the *Golden State [Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)] test, we need not go no further than the *Wilder* opinion. The *Wilder* Court found that Congress had not foreclosed § 1983 enforcement in the Medicaid statute, *Wilder,* 496 U.S. at 520–23, 110 S.Ct. at 2523–24, and we are bound by that judgment.

*Reynolds,* 6 F.3d at 528. Thus, having found both prongs of the *Reynolds* test satisfied here, the court concludes that Plaintiffs may seek enforcement of § 1396d through use of 42 U.S.C. § 1983. Therefore, this aspect of Defendants' Motion for Summary Judgment shall be denied.

*(5). Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.* Defendants next attack Plaintiffs' claims grounded on section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. The court will consider each of these claims *seriatim.*

*(a). Section 504.* First, with respect to their Section 504 claim, Plaintiffs contend that this section mandates mentally disabled individuals have the right to minimally adequate habilitation in a community based setting.[14] Defendants allegedly violated this statute by failing to provide community based alternatives for Plaintiffs in lieu of institutionalization. Am.Compl. at Count XXXIV. Because the court concludes that section 504 does not create an obligation upon Defendants to undertake the action sought by Plaintiffs, this portion of this complaint must be dismissed.

Under section 504, an individual who is otherwise qualified to perform a task or to receive the benefits of any program or activity that receives federal assistance may not be denied these opportunities merely because of an existing handicap. *Kentucky Ass'n for Retarded Citizens v. Conn,* 510 F.Supp. 1233, 1243 (W.D.Ky.1980), *aff'd* 674 F.2d 582 (6th Cir.), *cert. denied sub nom. Bruington v. Conn,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982). The statute contains no language explicitly imposing an affirmative action on the part of a state. *See Monahan v. Nebraska,* 687 F.2d 1164, 1170 (8th Cir. 1982), *cert. denied sub nom. Rose v. Nebraska,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983).

The position that section 504 does not require federal funding recipients to undertake affirmative action is supported by the decision of the Supreme Court in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).[15] In

---

**13.** In *Stewart,* the Fifth Circuit concluded that because its holding rested "on absence of action under color of state law, we need not address the nature of the substantive rights available through the Social Security Act that are enforceable against the state under § 1983." *Stewart,* 769 F.2d at 1090 n. 2.

**14.** Section 794 provides in part:
No otherwise qualified handicapped individual in the United States, as defined in § 706(6) of this title, shall, solely by reason of his handi-

cap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

**15.** The term "affirmative action" refers to "'changes,' 'adjustments,' or 'modifications' to existing programs that would be 'substantial,' or that would constitute 'fundamental alteration[s]

*Davis,* which concerned a hearing impaired student's attempt to gain admission to a nursing program, the Court noted that the student's admission would require a substantial modification of the school's facilities, and pointed out that "neither the language, purpose, nor history of [section] 504 reveals an intent to impose an affirmative-action obligation on all recipients of federal funds." *Id.* at 411, 99 S.Ct. at 2369.

The denial of community based habilitation services to mentally disabled individuals does not constitute a viable cause of under section 504. *Sabo v. O'Bannon,* 586 F.Supp. 1132, 1137 (E.D.Pa.1984); *See Kentucky Ass'n for Retarded Citizens, Inc. v. Conn,* 674 F.2d 582, 585 (6th Cir.), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982) (holding that section 504 does not include a legislative mandate for deinstitutionalization); *see also Manecke v. School Bd.,* 553 F.Supp. 787, 790 n. 4 (M.D.Fla.1982), *aff'd in part and rev'd in part,* 762 F.2d 912 (11th Cir. 1985); *Garrity v. Gallen,* 522 F.Supp. 171, 213 (D.N.H.1981).

Therefore, because the case law and the statutory language does not support requiring Defendants to take affirmative action, the court holds that to the extent Plaintiffs seek under section 504 to assert a claim in Count XXXIV that Defendants are required to create community based services for all subclass c Plaintiffs, that portion of Count XXXIV must be denied.

The conclusion reached by the court above, however, does not conclude its analysis of Plaintiffs claims on this issue. In interpreting its decision in *Davis,* the Supreme Court pointed out:

> Davis addressed that portion of section 504 which requires that a handicapped individual be "otherwise qualified" before the nondiscrimination principle of section 504 becomes relevant. However, the question of who is "otherwise qualified" and what actions constitute "discrimination" under the section would seem to be two sides of a single coin; the ultimate question is the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handicapped.

*Alexander v. Choate,* 469 U.S. 287, 299 n. 19, 105 S.Ct. 712, 719, n. 19, 83 L.Ed.2d 661 (1985). The Court went on to note:

> Davis thus struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs: while a grantee need not be required to make "fundamental" or "substantial" modifications to accommodate the handicapped, it may be required to make "reasonable ones."

*Id.* at 300, 105 S.Ct. at 720.

■ This balance struck in *Davis* requires that Defendants make reasonable accommodations for those otherwise qualified Plaintiffs seeking access to community based programs.[16] The multiple disabilities of Plaintiffs, and their severity, are disabilities under section 504 which cannot solely constitute the reason for denying Plaintiffs' access to community based programs. *See Plummer ex rel. Plummer v. Branstad,* 731 F.2d 574, 578 (8th Cir.1984); *Garrity v. Gallen,* 522 F.Supp. 171, 214–15 (D.N.H.1981); *Lynch v. Maher,* 507 F.Supp. 1268, 1278–79 & n. 15 (D.Conn.1981). Plaintiffs assert that Defendants have excluded them from consideration for community based facilities solely on the

---

in the nature of the program....,' rather than to those changes that would be reasonable accommodations." *Alexander v. Choate,* 469 U.S. 287, 301 n. 20, 105 S.Ct. 712, 720 n. 20, 83 L.Ed.2d 661 (1985) (citations omitted).

**16.** The Eighth Circuit has adopted the following four part test for establishing a claim under section 504:

> (1) that the plaintiff is a "handicapped individual" under the terms of the statute; (2) that the plaintiff is "otherwise qualified" to participate in the program or activity at issue; (3) that the plaintiff was excluded from the program or activity "solely by reason" of her or his handicap; and (4) that the program or activity receives federal financial assistance, or is conducted by an executive agency of the United States Postal Service.

*Plummer ex rel. Plummer v. Branstad,* 731 F.2d 574, 577 (8th Cir.1984) (citing *Doe v. New York Univ.,* 666 F.2d 761, 774–775 (2d Cir.1981)).

basis of the severity of their handicaps.[17] The court finds that Defendants have failed to meet their initial burden of demonstrating a lack of a genuine issue of material fact. *See Hartnagel,* 953 F.2d at 395. Clearly, material fact questions exist here as to whether Plaintiffs are "otherwise qualified" for community based programs, whether Plaintiffs were excluded from these programs solely by reason of the severity of their handicaps, and whether Defendants could have made reasonable accommodations for Plaintiffs' handicaps. Therefore, this aspect of Defendants' Motion for Summary Judgment shall be denied.

■ *(b). Title II of the Americans with Disabilities Act.* Defendants also challenge Plaintiffs claim brought under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.[18] Section 12132, Title 42 U.S.C., states:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Because the court concludes that Title II of the ADA does not mandate deinstitutionalization, Plaintiffs' claim under the ADA must be dismissed.

It should be noted initially that neither party has cited any case law interpreting this section of Title II of the ADA. The court, therefore, has been guided in its decision by the language of the ADA and its legislative history. The court notes that neither the explicit language of the ADA nor its legislative history call for or require deinstitutionalization of mentally disabled individuals. Indeed, the legislative history of the statue does not even discuss such a proposition. This dearth of support in the text and legislative history of the ADA leads the court to the inescapable conclusion that the ADA does not require deinstitutionalization of mentally disabled individuals. Clearly, if Congress had actually intended to require states to provide community based programs for mentally disabled individuals currently residing in institutional settings, it surely would have found a less oblique way of doing so.

This conclusion is supported by the legislative history of Title II of the ADA. Section 12132 of Title II was intended to

extend[ ] the nondiscrimination policy in section 504 of the Rehabilitation Act of 1973 to cover all State and local governmental entities. Specifically, section [12132] provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination by a department, agency, special purpose district, or other instrumentality of a State or local government.

The Committee has chosen not to list all the types of actions that are included within the term "discrimination," as was done in titles I and III, because this title essentially simply extends the antidiscrimination prohibition embodies in section 504 to all actions of state and local governments. . . . Finally, it is the Committee's intent that section [12132] also be interpreted consistent with *Alexander v. Choate,* 469 U.S. 287 [105 S.Ct. 712, 83 L.Ed.2d 661] (1985).

H.R.Rep. No. 101–485(II), 101st Cong., 2nd Sess. 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 303, 367 (1990). The significance of this legislative history is that it clearly reflects Congress' intent that Title II of the ADA was to be interpreted consistent with prior interpretations of section 504 of the Rehabilitation Act of 1973. As discussed above, the court does not construe section 504 to require Defendants to undertake such an affirmative action as providing community

---

**17.** By way of example, Plaintiffs assert that Plaintiff Amanda Poules will not be admitted to a community based intermediate care facility because she has a gastrostomy tube. Fourth Am. Compl. at ¶ 42.

**18.** In Count XXXV of their fourth amended complaint, Plaintiffs assert that Defendants have failed to provide community based programming alternatives to Plaintiffs and have thus violated a mandate of the ADA that programming be administered in the most integrated setting appropriate for Plaintiffs.

based services to Plaintiffs. Consistent with this court's interpretation of section 504 and the Supreme Court's holding in *Choate,* 469 U.S. at 300, 105 S.Ct. at 719–20, that states need not make "fundamental" or "substantial" modifications to their programs, the court concludes that Plaintiffs' claim in Count XXXV that Defendants are required to create alternative community based services for Plaintiffs must be denied.[19] This segment of the motion for summary judgment shall, therefore, be granted and Count XXXV shall be dismissed.[20]

**(6). Individuals with Disabilities Education Act.** Finally, the court shall consider Defendants' assertions with respect to Plaintiffs' claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400.[21]

The IDEA requires states to provide all disabled children with a "free appropriate public education." 20 U.S.C. § 1412(1); *see Board of Educ. v. Rowley,* 458 U.S. 176, 200, 102 S.Ct. 3034, 3047, 73 L.Ed.2d 690 (1982).[22] IDEA also requires that this education take place to the maximum extent possible with nondisabled children in the least restrictive environment consistent with the needs of the disabled children.[23] *See* 20 U.S.C. § 1412(5). In order to provide that all children with

disabilities receive an appropriate public education, the education provided to children with disabilities must be tailored to the unique needs of each child through employment of an individualized education plan ("IEP").[24] *See* 20 U.S.C. § 1401(a)(20). Plaintiffs contend that Defendants have failed to meet these measures under the IDEA.

In support of their motion on these claims, Defendants have submitted the affidavit of Charles M. Palmer. Mr. Palmer avers that: "School-aged residents of Glenwood and Woodward are educated in the local Glenwood, Woodward/Granger, Ruby Van Meter, Adel, Boone, Council Bluffs, and Des Moines public school systems." Palmer Aff. at ¶ 8. The paucity of Mr. Palmer's affidavit, together with Defendants' other submissions in support of their motion, fails to establish Defendants' initial burden under Rule 56(c) of showing that segment of the record which demonstrates the lack of genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The court, therefore, concludes that Defendants' motion shall be denied with respect to Plaintiffs' claims under the IDEA.[25]

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is denied in

---

**19.** Plaintiffs rely almost exclusively on 28 CFR § 35.130(d) to support their position. Section 35.130(d) states that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the need of qualified individuals with disabilities." The court does not interpret this regulation as requiring states to create community based, or expand those programs currently in existence.

**20.** The court notes that while a sub-class of Plaintiffs seek relief in Count XXXIV under section 504, the entire Plaintiffs' class seeks relief under the ADA. Therein lies the reason for the disparity in the court's treatment of the claims. The sub class c Plaintiffs assert in respect to their claims under section 504 that they have been subjected to discrimination based on the severity of their disabilities. No such assertion is made by Plaintiffs with respect to their ADA claims.

**21.** Plaintiffs' claims with respect to the IDEA are found in Counts XXX through XXXIII of Plaintiffs' Fourth Amended Complaint.

**22.** The purpose behind the IDEA was to rectify the discrimination suffered by children with disabilities at the hands of public schools. *See Row-*

*ley,* 458 U.S. at 179, 189, 102 S.Ct. at 3037, 3042.

**23.** This concept is referred to as "mainstreaming." *See Sherri A.D. v. Kirby,* 975 F.2d 193, 206 (5th Cir.1992).

**24.** Disabled schoolchildren and their parents must be permitted to be involved in developing their child's IEP. 20 U.S.C. § 1401(a)(20). Each child's IEP must be reviewed on at least an annual basis. 20 U.S.C. § 1414(a)(5).

**25.** The question of the court's jurisdiction on Plaintiffs' claims under the IDEA has not been raised by Defendants. The court notes that when a party wishes to appeal a dispute with a local public school district, the party may obtain an "impartial due process hearing" before a hearing officer. 20 U.S.C. § 1415(b)(2). If either party is dissatisfied with the result of the hearing before the special education hearing officer, that party may then appeal to federal district court. 20 U.S.C. § 1415(e)(2).

part and granted in part. The court grants Defendants' motion as to Count XXXV, Plaintiffs' claim under the ADA, and that count is dismissed. The court further concludes that Defendants' motion shall be granted as to Plaintiffs' claim in Count XXXIV that under Section 504 of the Rehabilitation Act Defendants are required to create community based services. Finally, the court grants Defendants' motion with respect to Plaintiffs' claims that under the Due Process Clause they have a right to placement in the least restrictive environment consistent with qualified professional judgment. In all other respects, Defendants' Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**